D. Maimon Kirschenbaum
Denise A. Schulman
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x
**KATHLEEN MITCHELL,**

   **Plaintiff,**

 v.

**CEROS, INC., JENNIFER SCHWALB, and**
**MELISSA WYGANT,**


   **Defendants.**
-----------------------------------------------------x

**CASE NO. 21 CV 1570**

**AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

  Plaintiff Kathleen Mitchell alleges as follows:

## INTRODUCTION

  1. Ceros, Inc. touts itself as one of the "best workplaces," boasting on its website about numerous awards from Fortune Magazine and other publications. Unfortunately for women, that comes at the price of earning substantially less than their male counterparts.

  2. In fact, Defendant Melissa Wygant participated in a Slack discussion that was public to the entire company, wherein it was broadcasted Ceros would offer a new male hire with same job title as Plaintiff $22,000 more in salary than it paid Plaintiff. When Plaintiff complained about this in early 2020, Defendant Wygant cried crocodile tears claiming to be sorry for the grossly disparate pay and lying that she had not realized that there was in fact a disparity. However,

despite the big show of emotion, Defendants ultimately increased Plaintiff's salary by only $5,000, still leaving Plaintiff significantly behind her male counterpart.

3.  Plaintiff's insistence on pay equality ultimately cost Plaintiff her job. Shortly after Defendants learned that Plaintiff had discussed the gender disparity with a female coworker (something the company explicitly told her she was free to do), Defendant Schwalb berated Plaintiff for continuing to pursue gender equality at Ceros.

4.  Shortly thereafter, Defendants fired Plaintiff alleging fictitious performance deficiencies. To be sure, until Plaintiff raised issues of gender disparity, there had not been a single substantive complaint with respect to Plaintiff's performance, which was excellent.

## JURISDICTION AND VENUE

5.  Plaintiff Kathleen Mitchell brings this action against Defendants alleging discrimination claims brought under the federal Equal Pay Act, 29 U.S.C. 206(d) ("EPA"), the New York Equal Pay Act, NYLL § 194 ("NY EPA"), and the New York City Human Rights Law, ("NYCHRL") New York Administrative Code §§ 8-107(1), et al.

6.  This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the federal EPA. This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7.  Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

8. Defendant Ceros, Inc. ("Ceros") is a New York corporation that provides a cloud-based platform encompassing a collaborative, real-time digital canvas, upon which designers create animated, interactive content without the need for developers.

9. Defendant Melissa Wygant is the Head of Professional Services at Ceros and was the head of Plaintiff's team.

10. Defendant Jennifer Schwalb is the Chief People Officer at Ceros.

11. Plaintiff Kathleen Mitchell is a woman. Plaintiff began working for Ceros in August 2018 as a Junior Producer. In mid-2019, she was promoted to Producer, which she remained until her termination in January 2020.

## FACTS

12. Plaintiff began working for Ceros as a Junior Producer in August 2018. Her starting salary was $60,000. Although Plaintiff tried to negotiate a higher starting salary, Ceros refused to budge.

13. Plaintiff was an excellent performer, and in August 2019 she was promoted to Producer and given a salary increase to $68,000.

14. In November 2019, Defendants hired as another Producer a man named Anish Joshi.

15. At the time of Mr. Joshi's hire, he and Plaintiff had roughly the same number of years of work experience in advertising.

16. Plaintiff and Mr. Joshi were subject to the same level and form of supervision at Ceros. They both reported directly to Kevin Au, who in turn reported to Defendant Wygant.

17. As the head of Plaintiff's team, Defendant Wygant had hiring and firing authority. Indeed, Defendant Wygant interviewed Plaintiff and, upon information and belief, Mr. Joshi, before Ceros extended them job offers.

18. While Mr. Au was responsible for Plaintiff's and Mr. Joshi's day-to-day supervision, Defendant Wygant also had supervisory authority over them. For example, Defendant Wygant could and did give them assignments.

19. Prior to the COVID-19 pandemic, Plaintiff and Mr. Joshi worked side-by-side in Ceros' open-plan office.

20. Plaintiff and Mr. Joshi had the same job duties and responsibilities at Ceros, which required them to use the same skills. Specifically, as Producers Plaintiff and Mr. Joshi were responsible for working with clients and internal teams to launch online interactive content. This included working with clients to develop the desired content and working with internal teams to produce the content. As part of this, Plaintiff and Mr. Joshi were also responsible for creating and adhering to schedules and budgets.

21. Shortly after Mr. Joshi's hire, Plaintiff learned that there was a Slack channel available to all Ceros employees in which Ceros management, including Mr. Au, Defendant Wygant, and a human resources employee, discussed interviewing and hiring Mr. Joshi. As part of the discussion, they decided to offer Mr. Joshi a salary of $90,000.

22. In that same Slack discussion, it was discussed that Plaintiff's pay was in the "high sixties." Despite this enormous disparity, the group decided to go ahead and offer Mr. Joshi $90,000 with no explanation as to why he should earn so much more than Plaintiff and without any discussion of raising Plaintiff's salary to match Mr. Joshi's.

23. In or around January 2020, Plaintiff met with Defendant Schwalb and complained about Ceros paying her less than Mr. Joshi because of her gender.

24. Plaintiff had written down her complaint, which she read to Schwalb at that meeting. At Schwalb's direction, Plaintiff subsequently e-mailed the complaint to Schwalb.

25. Schwalb then held one meeting with Plaintiff and Mr. Au and another meeting with Plaintiff and Wygant.

26. During the meeting of Schwalb, Plaintiff, and Wygant, Wygant began to cry when faced with her participation in the Slack discussion and claimed that she had not realized the pay disparity between Plaintiff and Mr. Joshi. Plaintiff confronted Wygant with this lie, explaining that on the Slack chat, which Plaintiff had read, the disparity was explicitly identified.

27. The meeting ended with a promise by Defendants to rectify the situation. Defendants also stressed their commitment to gender equality and transparency and told Plaintiff that she was free to discuss this issue with anyone in the company. Unfortunately, this was lip service.

28. In or around February 2020, Defendant Schwalb told Plaintiff that her salary would be increased by $5,000. This raise still left Plaintiff's salary far below Mr. Joshi's $90,000 salary. (To be sure, when Mr. Joshi learned how poorly Plaintiff was paid compared to him, he was mortified. He ultimately left Ceros.)

29. In late 2020, Audrey Stevens, then an intern at Ceros, was offered a promotion to a full-time position. Ms. Stevens, who knew about Plaintiff's experience, told her manager with respect to the offered promotion, "I don't want what happened to Katie to happen to me." In other words, she was concerned, based on Plaintiff's experience, that Defendants had a pattern of underpaying women.

30. Shortly thereafter, Defendant Schwalb met with Plaintiff and berated Plaintiff for sharing her claims of unequal pay with Ms. Stevens.  Defendant Schwalb told Plaintiff: "I thought you let this [the pay disparity] go!  Why do you keep talking about it?!"  Plaintiff responded that (a) she was told she could share complaints within the company, and (b) she certainly did still care about being paid far less than her male counterpart.

31. Defendant Schwalb half-bakedly defended the company's unequal pay practices and said, "Sometimes it's just about bullshitting in an interview," as if Mr. Joshi had done something in his interview that warranted him being paid almost 1/3 more than Plaintiff's salary for the exact same position.

32. Defendant wasted no time in putting an end to what they now viewed as a problem: Plaintiff's opposition to gender unequal pay practices.  Several weeks later, on January 7, 2021, Defendant Schwalb and Mr. Au had a Zoom meeting with Plaintiff.

33. At the beginning of the meeting, Mr. Au told Plaintiff that Ceros was terminating her employment.  It was evident that Defendants Schwalb and Wygant made the decision to fire Plaintiff.

34. Plaintiff responded to Mr. Au by saying that she thought the termination was retaliation for her complaints about unequal pay.  At that point, Defendant Schwalb took over the meeting.

35. Defendant Schwalb raised several purported performance deficiencies which were plainly pretextual.  Plaintiff was an excellent performer, and until her complaints of unequal pay, there had been no issue at all with Plaintiff's performance.

36. Defendant Schwalb stated that she had personally reviewed e-mails reflecting these purported performance issues that justified Plaintiff's termination, making clear that, as Ceros' top

human resources employee, she was one of the decision makers who authorized Plaintiff's termination.

37. Defendant Schwalb also stated that Plaintiff's termination was supported by Plaintiff's team's leadership, *i.e.*, Defendant Wygant, reflecting Wygant's role in the termination decision as well.

38. Defendants' discriminatory and retaliatory treatment of Plaintiff caused her monetary loss, humiliation and emotional distress.

## FIRST CLAIM FOR RELIEF
### Federal Equal Pay Act ("EPA"), 29 U.S.C. §§ 206(d), 216(b)

39. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

40. Defendants have discriminated against Plaintiff within the meaning of the Equal Pay Act of 1963, 26 U.S.C. §§ 206 *et seq.*, by paying her less than similarly situated male colleagues even though Plaintiff performed similar duties requiring the same skill, effort, and responsibility as her male counterpart.

41. The differential in pay between male and female employees was not due to seniority, merit, quantity or quality of production, or a factor other than sex.

42. The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).

43. Plaintiff seeks all legal and equitable remedies available for violations of the EPA, including unpaid compensation, liquidated damages, attorneys' fees and costs, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
## EPA RETALIATION
## 29 U.S.C. §§ 215(a)(3), 216(b)
## Against Defendants Ceros and Schwalb

44. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

45. Plaintiff engaged in protected activity under the EPA by complaining to Defendants about gender discrimination in compensation.

46. Because of these complaints, Defendants Ceros and Schwalb retaliated against Plaintiff in violation of 29 U.S.C § 215(a)(3) by terminating her employment.

47. Because of Defendants' unlawful conduct, Plaintiff is entitled all legal and equitable remedies available under 29 U.S.C. § 216(b), including reinstatement, back pay, liquidated damages, costs and attorneys' fees, and pre- and post-judgment interest.

## THIRD CLAIM FOR RELIEF
## New York State Equal Pay Act ("NY EPA"),
## N.Y. Lab. Law §§ 194, 198

48. Plaintiffs realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

49. Defendants have discriminated against Plaintiff within the meaning of the New York Equal Pay Act, N.Y. Lab. Law § 194, by paying her less than similarly situated male colleague even though Plaintiff performed similar duties requiring the same skill, effort, and responsibility as her male counterpart.

50. The differential in pay between male and female employees was not due to seniority, merit, quantity or quality of production, or a bona fide factor other than sex.

51. The foregoing conduct constitutes a willful violation of the New York EPA within the meaning of N.Y. Lab. Law 198(1-a).

8

52. Plaintiff seeks all legal and equitable remedies available for violations of the NY EPA, including unpaid compensation, liquidated damages, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### FOURTH CLAIM FOR RELIEF
### NY EPA RETALIATION
### N.Y. Lab. Law § 215
### Against Defendants Ceros and Schwalb

53. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

54. Plaintiff engaged in protected activity under the New York Labor Law by complaining to Defendants about gender discrimination in compensation.

55. Because of these complaints, Defendants Ceros and Schwalb retaliated against Plaintiff in violation of N.Y. Lab. Law § 215 by terminating her employment.

56. Plaintiff is entitled all legal and equitable remedies available under N.Y. Lab. Law § 215(2)(a), including reinstatement, back pay, liquidated damages, costs and attorneys' fees, and pre- and post-judgment interest.

57. The Attorney General of New York will be notified and sent a copy of this Complaint as required by N.Y. Lab. Law § 215(b)(2).

### FIFTH CLAIM FOR RELIEF
### New York City Human Rights Law ("NYCHRL") Discrimination,
### N.Y.C. Admin. Code §§ 8-101 *et seq.*

58. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

59. Defendants have discriminated against Plaintiff on the basis of her gender by paying her less than similarly situated male employees.

60. Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected rights.

61. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including damages for economic loss and emotional distress; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

62. The New York City Commission on Human Rights will be notified and sent a copy of this Complaint.

### SIXTH CLAIM FOR RELIEF
### NYCHRL RETALIATION
### NYCHRL, N.Y. Admin. Code § 8-107(7)
### Against Defendants Ceros and Schwalb

63. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

64. Plaintiff engaged in protected activity under the New York Labor Law by complaining to Defendants about gender discrimination in compensation.

65. Because of these complaints, Defendants Ceros and Schwalb retaliated against Plaintiff in violation of N.Y. Admin. Code § 8-107(7) by terminating her employment.

66. Defendants' conduct was reasonably likely to deter a person from engaging in protected activity or complaining about pay inequality.

67. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

68. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to

emotional distress, physical pain and suffering, damage to Plaintiff s good name and reputation, lasting embarrassment, and humiliation.

69. Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected rights.

70. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for economic loss and emotional distress; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. An award of damages, according to proof, including, back pay, front pay, compensatory damages, emotional distress damages, liquidated damages, and punitive damages, to be paid by Defendants;

B. Penalties available under applicable laws;

C. Costs of action incurred herein, including expert fees;

D. Attorneys' fees;

E. Pre-judgment and post-judgment interest, as provided by law; and

F. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated: New York, New York  
       May 14, 2021

Respectfully submitted,

JOSEPH & KIRSCHENBAUM LLP

By: /s/ Denise A. Schulman  
    D. Maimon Kirschenbaum  
    Denise A. Schulman  
    32 Broadway, 5th Floor  
    New York, NY 10279  
    Tel: (212) 688-5640  
    Fax: (212) 688-2548

*Attorneys for Plaintiff*

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.