UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHLEEN MITCHELL,

                                    Plaintiff,

                    -v.-

CEROS, INC., JENNIFER SCHWALB,
and MELISSA WYGANT,

                                    Defendants.

21 Civ. 1570 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Kathleen Mitchell brings this action against her former employer, Ceros, Inc. ("Ceros"), as well as Jennifer Schwalb, Ceros's Chief People Officer, and Melissa Wygant, Ceros's Head of Professional Services (the "Individual Defendants," and together with Ceros, "Defendants"), alleging violations of the Equal Pay Act of 1963 (the "EPA"), 26 U.S.C. § 206(d); the New York Equal Pay Law, a part of the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 650-665, 195, 198; and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 8-134.  Defendants now move for partial dismissal of Plaintiff's Amended Complaint, which is the operative pleading in this matter. For the reasons that follow, the Court denies Defendants' motion.

## BACKGROUND[1]

### A.    Factual Background

Ceros is a New York corporation that provides a cloud-based platform encompassing a collaborative, real-time digital canvas, upon which designers

---

[1]    This Opinion draws its facts from the Amended Complaint (the "AC" (Dkt. #12)), the well-pleaded allegations of which are taken as true for purposes of this motion.  For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss the Amended Complaint as "Def. Br." (Dkt. #18); Plaintiff's

create animated, interactive content. (AC ¶ 8). Plaintiff began working for Ceros as a Junior Producer in August 2018 at a starting salary of $60,000. (*Id.* at ¶ 12). Although Plaintiff attempted to negotiate a higher starting salary, she was ultimately unsuccessful. (*Id.*). In August 2019, she was promoted to Producer and her salary increased to $68,000. (*Id.* at ¶ 13).

In November 2019, Ceros hired another Producer named Anish Joshi, a man with roughly the same number of years of work experience in advertising as Plaintiff. (AC ¶¶ 14, 15). Prior to the COVID-19 pandemic, Plaintiff and Joshi worked side-by-side in Ceros's open-plan office space. (*Id.* at ¶ 19). The two shared the same job duties and responsibilities at Ceros, which required them to use the same skills. (*Id.* at ¶ 20). Specifically, as Producers, Plaintiff and Joshi were each responsible for working with clients and internal teams to launch online interactive content. (*Id.*). This included working externally with clients to develop the desired content and working internally with Ceros teams to produce the content. (*Id.*). As part of this work, both Plaintiff and Joshi were responsible for creating and adhering to schedules and budgets. (*Id.*). Plaintiff and Joshi both reported directly to non-party Kevin Au, who was responsible for their day-to-day supervision; and Au reported to Wygant, who had interviewed both Plaintiff and Joshi before Ceros extended them job offers. (*Id.* at ¶¶ 16-18). On occasion, Wygant would assign work to Plaintiff and Joshi herself. (*Id.* at ¶ 18).

---

memorandum of law in opposition to Defendants' motion to dismiss as "Pl. Opp." (Dkt. #19); and Defendants' reply memorandum as "Def. Reply" (Dkt. #20).

Shortly after Joshi was hired, Plaintiff discovered a Slack channel available to all Ceros employees.  (AC ¶ 21).  In the channel, Plaintiff found messages exchanged among members of Ceros's management team, including Au, Wygant, and a non-party human resources employee, discussing interviewing and hiring Joshi.  (*Id.*).  As part of this discussion, the group noted that while Plaintiff's pay was in the "high sixties," the group decided to offer Joshi a starting salary of $90,000.  (*Id.* at ¶ 22).  The group did not offer an explanation as to why Joshi should earn so much more than Plaintiff, nor did the group discuss raising Plaintiff's salary to match Joshi's.  (*Id.*).

In or around January 2020, after seeing the Slack discussion, Plaintiff prepared a written complaint about Ceros paying her less than her male counterpart, which she read aloud and subsequently emailed to Schwalb.  (AC ¶¶ 10, 23-24).  Schwalb then held a meeting with Plaintiff and Au, and another meeting with Plaintiff and Wygant.  (*Id.* at ¶ 25).  During the latter meeting, Wygant began to cry when Plaintiff confronted her about her participation in the Slack discussion.  (*Id.* at ¶ 26).  Although Wygant claimed that she had not realized the pay disparity between Plaintiff and Joshi, Plaintiff reminded Wygant that this disparity had been explicitly mentioned in the Slack discussion.  (*Id.*).  At the end of the meeting, Defendants promised to rectify the situation, stressed their commitment to gender equality and transparency, and told Plaintiff that she was free to discuss this issue with anyone in the company.  (*Id.* at ¶ 27).  The following month, Schwalb informed Plaintiff that

her salary would be increased by $5,000, bringing it to $73,000 — still far below Joshi's $90,000 salary.  (*Id.* at ¶ 28).

Several months later, in late 2020, an intern at Ceros was offered a full-time position with the company.  (AC ¶ 29).  The intern, who knew about Plaintiff's experience, told her manager with respect to the offered promotion, "I don't want what happened to [Plaintiff] to happen to me."  (*Id.*).  Shortly thereafter, Schwalb berated Plaintiff for sharing her claims of unequal pay with the intern, exclaiming that "I thought you let [the pay disparity] go!  Why do you keep talking about it?"  (*Id.* at ¶ 30).  When Plaintiff responded that, contrary to Schwalb's suggestion, she still cared about being paid far less than her male counterpart, Schwalb stated, "Sometimes it's just about bullshitting in an interview[.]"  (*Id.* at ¶ 31).  Plaintiff understood Schwalb's comment to be a defense of the company's unequal pay practices.  (*Id.*).

On January 7, 2021, Schwalb and Au held a Zoom meeting with Plaintiff during which Au informed Plaintiff that Ceros was terminating her employment.  (AC ¶¶ 32-33).  When Plaintiff responded that she believed she was being retaliated against for making complaints about her unequal pay, Schwalb stepped in to raise several purported performance deficiencies that Plaintiff alleges were "plainly pretextual."  (*Id.* at ¶¶ 33-35).[2]  In relevant part, Schwalb stated that she had personally reviewed emails reflecting these performance issues, and that Plaintiff's termination was supported by Plaintiff's

---

[2]    According to Plaintiff, there had been no issue at all with Plaintiff's performance until she complained of unequal pay.  (AC ¶ 35).

team's leadership, including Wygant.  According to Plaintiff, Defendants'
treatment caused her to suffer monetary loss, humiliation, and emotional
distress.  (*Id.* at ¶ 38).

## B.   Procedural Background

Plaintiff filed the initial Complaint in this action on February 22, 2021.
(Dkt. #1).  On April 19, 2021, Defendants requested leave to file a motion to
dismiss portions of Plaintiff's Complaint.  (Dkt. #8).  Plaintiff opposed this
request in a letter filed on April 22, 2021.  (Dkt. #10).  The Court responded by
directing Plaintiff to file an amended complaint by May 14, 2021, and directing
Defendants to respond to the amended complaint, in the form of either an
answer or a pre-motion letter, by June 4, 2021.  (Dkt. #11).

Plaintiff filed the Amended Complaint on May 14, 2021, alleging (i) wage
discrimination in violation of the EPA (Count One); (ii) retaliation by
Defendants Ceros and Schwalb in violation of the EPA (Count Two); (iii) wage
discrimination in violation of the NYLL (Count Three); (iv) retaliation by
Defendants Ceros and Schwalb in violation the NYLL (Count Four); (v) wage
discrimination in violation of the NYCHRL (Count Five); and (vi) retaliation by
Defendants Ceros and Schwalb in violation of the NYCHRL (Count Six).  (Dkt.
#12).

On June 4, 2021, Defendants responded by filing a pre-motion letter
requesting leave to file a motion to dismiss Plaintiff's first, third, and fifth
claims for relief and all claims against the Individual Defendants.  (Dkt. #13).
Plaintiff filed a letter in opposition on June 9, 2021.  (Dkt. #14).  On June 11,

2021, the Court set a briefing schedule on Defendants' contemplated motion to dismiss. (Dkt. #15). Defendants filed their motion to dismiss on July 12, 2021. (Dkt. #16-18). Plaintiff filed her opposition brief on August 11, 2021. (Dkt. #19). Defendants filed their reply brief on August 25, 2021. (Dkt. #20). Accordingly, Defendants' motion is fully briefed and ripe for decision.

## DISCUSSION

### A.   Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). While the plausibility requirement "is not akin to a 'probability requirement' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Toward that end, a plaintiff must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

6

**B.     The Court Denies Defendants' Motion to Dismiss the Claims Against the Individual Defendants**

The EPA was enacted as an amendment to the Fair Labor Standards Act (the "FLSA") and is part of that statute.  *See generally Crawley* v. *Macy's Retail Holdings, Inc.*, No. 15 Civ. 2228 (KPF), 2017 WL 2297018, at *5 (S.D.N.Y. May 25, 2017) (citing *Lifrak* v. *N.Y.C. Council*, 389 F. Supp. 2d 500, 503 (S.D.N.Y. 2005)); *see also Kassman* v. *KPMG LLP*, 416 F. Supp. 3d 252, 286 (S.D.N.Y. 2018) (explaining that the EPA is "part of" the FLSA).  To state a claim under the FLSA or the NYLL, a plaintiff must establish that the defendant in question is an "employer" within the meaning of those statutes.  *See Roelcke* v. *Zip Aviation, LLC*, — F. Supp. 3d —, No. 15 Civ. 6284 (JGK), 2021 WL 5491395, at *5 (S.D.N.Y. Nov. 23, 2021).  A plaintiff who cannot make this threshold showing cannot maintain a claim under either statute.  *See In re Michael Stapleton Assocs. Ltd.*, No. 17 Civ. 5468 (AJN), 2018 WL 3962931, at *2 (S.D.N.Y. Aug. 17, 2018) (citing *Herman* v. *RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999), *holding modified by Zheng* v. *Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003)); *see also Victoriano Gonzalez* v. *Victoria G's Pizzeria LLC*, No. 19 Civ. 6996 (DLI) (RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021) (collecting cases).

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and the NYLL defines the term as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service," N.Y. Lab. Law § 190(3).  Given the substantial

breadth of these statutory definitions, courts in the Second Circuit treat "employment" as a "flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances" and consider "different sets of relevant factors based on the factual challenges posed by particular cases." *Barfield* v. *N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008); *see also Cho* v. *Osaka Zen Spa*, No. 19 Civ. 7935 (ER), 2021 WL 1736813, at *3 (S.D.N.Y. May 3, 2021) (observing that courts use "the same tests to determine whether an individual constitutes an employer under the FLSA and the NYLL").

"In analyzing the question of whether a defendant is an employer, 'the overarching concern is whether the alleged employer possessed the power to control the workers in question.'" *Weng* v. *HungryPanda US, Inc.*, No. 19 Civ. 11882 (KPF), 2022 WL 292799, at *4 (S.D.N.Y. Jan. 31, 2022) (internal quotations and citations omitted). Several factors, known as the *Carter* factors, guide the court's analysis of whether a defendant exercised a sufficient degree of control to constitute an employer under the FLSA and the NYLL, including: "whether the alleged employer [i] had the power to hire and fire the employees, [ii] supervised and controlled employee work schedules or conditions of employment, [iii] determined the rate and method of payment, and [iv] maintained employment records." *Id.* (quoting *Carter* v. *Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). Although each of the *Carter* factors bears on the court's inquiry, none of the factors is dispositive, and the court must make its determination "on a case-by-case basis by review of the totality of the circumstances." *Irizarry* v. *Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013).

8

Defendants do not dispute that Ceros was Plaintiff's employer, but they argue that Plaintiff has failed to establish that either of the Individual Defendants qualified as an "employer" within the meaning of the FLSA or the NYLL. (Def. Br. 10). Defendants contend that this failure should result in the dismissal of the claims levied against Schwalb and Wygant in their individual capacities. (*Id.*). The Court evaluates Plaintiff's claims against each Individual Defendant accordingly.

### 1.   Wygant

As alleged in the Amended Complaint, Wygant "is the Head of Professional Services at Ceros and was the head of Plaintiff's team," and Schwalb "is the Chief People Officer at Ceros." (AC ¶¶ 9-10). At the outset, the Court notes that the fact that Wygant occupied an elevated position at Ceros does not, standing alone, establish that she was Plaintiff's "employer." The Second Circuit has made clear that "[e]vidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status." *Weng*, 2022 WL 292799, at *6 (quoting *Irizarry*, 722 F.3d at 109). Rather, to be an employer, an individual defendant "must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry*, 722 F.3d at 109. Thus, as a general matter, "corporate officers and owners held to be employers under the FLSA have had some direct contact with the plaintiff employee, such as personally supervising the employee's work, including determining the employee's day-to-day work

9

schedules or tasks, signing the employee's paycheck or directly hiring the employees." *Vasto* v. *Credico (USA) LLC*, No. 15 Civ. 9298 (PAE), 2016 WL 4147241, at *6 (S.D.N.Y. Aug. 3, 2016).

Plaintiff has plausibly alleged that Wygant was her employer within the meaning of the FLSA and the NYLL, albeit just barely.  As an initial matter, Plaintiff's conclusory allegations that Wygant "had hiring and firing authority" and "had supervisory authority" (*see id.* at ¶¶ 17-18) are unavailing, because these allegations merely restate the *Carter* factors.  *See Carter*, 735 F.2d at 12. As numerous courts in this Circuit have held on similar records, such "boilerplate allegations" are "insufficient to survive a motion to dismiss." *Weng*, 2022 WL 292799, at *6; *see also Osaka Zen Spa*, 2021 WL 1736813, at *4 (deeming "conclusory allegations" that "track nearly verbatim with the factors set forth in *Carter*'s formal economic reality test" to be insufficient to survive a motion to dismiss); *Fallon* v. *18 Greenwich Ave., LLC*, No. 19 Civ. 9579 (MKV), 2021 WL 1105066, at *4 (S.D.N.Y. Mar. 23, 2021) (observing that "[i]t is well established that 'boilerplate allegations that simply recite the elements of the economic reality test are insufficient to state a claim'" (citations omitted)); *Huer Huang* v. *Shanghai City Corp.*, 459 F. Supp. 3d 580, 588 (S.D.N.Y. 2020) (finding that plaintiff's "allegations mirror, and do not add factual content to, the *Carter* factors" and thus "cannot make out a claim for relief, as numerous courts in this District have held on similar facts").

The AC purports that Wygant interviewed Plaintiff and Joshi; exercised supervisory control over Plaintiff and Joshi; and made the decision, together

with Schwalb, to fire Plaintiff.  (AC ¶¶ 9, 17, 33).  The Court notes that contrary to Plaintiff's assertion that the AC "pleads specific facts illustrating Wygant's hiring and firing authority" (Pl. Opp. 11-12), Plaintiff does not allege that Wygant personally extended job offers to candidates or personally participated in the decision to offer Joshi a salary of $90,000.  Instead, Plaintiff merely alleges that Wygant "interviewed" Plaintiff and Joshi "before *Ceros* extended them job offers" (*id.* at ¶ 17 (emphasis added)); was not responsible for Plaintiff's day-to-day supervision (*id.* at ¶ 18); "supported" Plaintiff's termination (*id.* at ¶ 37); and was a member of "a Slack channel available to all Ceros employees in which Ceros management discussed … hiring Mr. Joshi," and in which "the group decided" to offer Joshi a salary of $90,000 (*id.* at ¶¶ 21-22).  None of these allegations, standing alone, illustrates that Wygant possessed the power to control Plaintiff's working conditions.  However, considering her allegations holistically, the Court finds that Plaintiff has alleged that Wygant held an employee-facing position of leadership in the company and was a participant in several critical events — Plaintiff's job interview, the Slack discussion, one of two meetings about Plaintiff's complaints, and discussions among senior leadership regarding Plaintiff's termination.  It is therefore at least plausible that Wygant exercised control over Plaintiff, such that she can fairly be considered an "employer" within the meaning of the FLSA and the NYLL.

11

### 2.      Schwalb

Plaintiff has plausibly alleged that Schwalb had the power to hire and fire employees, determine the rate and method of payment, and maintain employment records. *See Carter*, 735 F.2d at 12. Plaintiff alleges that Schwalb was the individual who received and responded to Plaintiff's complaints of pay discrimination and was also the individual who notified Plaintiff of her pay raise. (AC ¶¶ 23-25, 28). Additionally, "as Ceros' top human resources employee," Schwalb was one of the two people who communicated to Plaintiff that she was being terminated. (*Id.* at ¶¶ 32-33, 36). During that conversation, "Schwalb stated that she had personally reviewed e-mails reflecting purported performance issues that justified Plaintiff's termination, making clear that … she was one of the decision makers who authorized Plaintiff's termination." (*Id.* at ¶ 36). These allegations are sufficient to demonstrate that Schwalb possessed the requisite power to control Plaintiff, such that she can fairly be considered an "employer" within the meaning of the FLSA and the NYLL.

### C.     The Court Denies Defendants' Motion to Dismiss Plaintiff's Discrimination and Retaliation Claims Under the EPA and the NYLL

Defendants also move to dismiss Plaintiff's discrimination and retaliation claims under the EPA and the NYLL. Because "[c]laims for violations of the [EPA] and the [NYLL] may be evaluated under the same standard," the Court considers them together. *Chiaramonte* v. *Animal Med. Ctr.*, No. 13 Civ. 5117 (KPF), 2014 WL 3611098, at *3 (S.D.N.Y. July 22, 2014). As will be explained

below, the Court finds that Plaintiff has plausibly alleged discrimination and retaliation claims under both statutes.

### 1.    Discrimination

Plaintiff alleges that Defendants discriminated against her within the meaning of the EPA and the NYLL by paying her less than a similarly situated male colleague despite the fact that Plaintiff performed similar duties requiring the same skill, effort, and responsibility as her male counterpart.  (AC ¶ 40). Moreover, Plaintiff alleges that the differential in pay between male and female employees was not due to seniority, merit, quantity or quality of production, or a factor other than sex.  (*Id.* at ¶ 41).  This alleged conduct, Plaintiff contends, constitutes a willful violation of both the EPA and the NYLL.  (*Id.* at ¶¶ 42, 49-51).

In order to make out a *prima facie* case of wage discrimination under the EPA and the NYLL, a plaintiff must show that: (i) the employer pays different wages to employees of the opposite sex; (ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (iii) the jobs are performed under similar working conditions.  *Boatright* v. *U.S. Bancorp*, No. 18 Civ. 7293 (LJL), 2020 WL 7388661, at *11 (S.D.N.Y. Dec. 16, 2020) (citing *Lavin-McEleney* v. *Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001)), *aff'd*, No. 20-4236-cv, 2022 WL 351059 (2d Cir. Feb. 7, 2022) (summary order); *see also Moazzaz* v. *MetLife, Inc.*, No. 19 Civ. 10531 (JPO), 2021 WL 827648, at *4 (S.D.N.Y. Mar. 4, 2021) ("The pleading standards for wage discrimination under the New York Labor Law mirror those for the federal Equal Pay Act.").  "[P]roof

of the employer's discriminatory intent is not necessary for the plaintiff to prevail on her claim." *Boatright*, 2020 WL 7388661, at *11; *see also Littlejohn* v. *City of New York*, 795 F.3d 297, 309 n.7 (2d Cir. 2015) (noting that under the EPA, "liability turns on whether lesser pay is given for equivalent work — discriminatory motivation is not an element of the claim"). Furthermore, while a plaintiff "need not allege facts establishing each element of a *prima facie* case of discrimination to survive a motion to dismiss," *Moazzaz*, 2021 WL 827648, at *6 (quoting *E.E.O.C.* v. *Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)), "it must at a minimum assert nonconclusory factual matter sufficient to nudge[ ] [its] claims ... across the line from conceivable to plausible to proceed," *E.E.O.C.*, 768 F.3d at 254 (internal quotation marks and citations omitted).

As in many discrimination cases, Plaintiff seeks to demonstrate discrimination on the basis of a "comparator," or a higher-paid colleague of the opposite gender. *Moazzaz*, 2021 WL 827648, at *4 (citing *Lavin-McEleney*, 239 F.3d at 480). A plaintiff and her comparator need not have "identical" jobs, but a higher-paid comparator should not hold a job requiring "greater skill, effort, and responsibility than [the] plaintiff's position." *Id.* This inquiry is informed by the EPA's implementing regulations, which provide that "[s]kill includes consideration of such factors as experience, training, education, and ability," 29 C.F.R. § 1620.15(a); "[e]ffort is concerned with the measurement of the physical or mental exertion needed for the performance of a job," *id.*, § 1620.16(a); and "[r]esponsibility is concerned with the degree of

14

accountability required in the performance of the job, with emphasis on the importance of the job obligation," *id.*, § 1620.17(a).

Perhaps unsurprisingly, given the broad array of factors that bear on "[w]hether two positions are 'substantially equivalent' for Equal Pay Act purposes," this fact-intensive analysis is typically conducted after discovery and treated as "a question for the jury." *Moazzaz*, 2021 WL 827648, at *4 (citing *Lavin-McEleney*, 239 F.3d at 480). Indeed, courts in the Second Circuit have only rarely dismissed Equal Pay Act claims on the pleadings, most notably when the complaint "stat[es] nothing about the actual content of the work done by the [employees compared]." *Id.* at *6 (quoting *E.E.O.C.*, 768 F.3d at 251 (emphasis removed)); *see also Wu* v. *Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 581 (2d Cir. 2020) (summary order) ("[Plaintiff] has not alleged anything about her actual job duties or the actual job duties of her putative comparators. Accordingly, her allegations fall short of the pleading standards we impose on EPA claims.").

Here, Plaintiff alleges that she and Joshi held the same job title (AC ¶¶ 13-14); reported to the same supervisor (*id.* at ¶ 16); had roughly the same number of years of work experience in advertising (*id.* at ¶ 15); worked side-by-side in Ceros's "open-plan office" (*id.* at ¶ 19); and "had the same job duties and responsibilities at Ceros, which required them to use the same skills" (*id.* at ¶ 20). More specifically, Plaintiff alleges that, as Producers, she and Joshi "were responsible for working with clients and internal teams to launch online interactive content," including "working with clients to develop the desired

content"; "working with internal teams to produce the content"; and "creating and adhering to schedules and budgets." (*Id.*).

Defendants argue that Plaintiff has not adequately pleaded that she and Joshi performed substantially equal work, criticizing Plaintiff's allegations as a "brief and summative description of the job duties and responsibilities of a Producer" that fails to permit a "reasonable inference" that the content of Plaintiff's and Joshi's positions was substantially equal. (Def. Br. 6). But Defendants' arguments do not accord with a fair reading of the Amended Complaint or the governing law. To sustain a claim under the EPA, a plaintiff need not show that her job was "identical" to that held by a higher-paid comparator. *Moazzaz*, 2021 WL 827648, at *6 (citing *Tomka* v. *Seiler Corp.*, 66 F.3d 1295, 1311 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus. Inc.* v. *Ellerth*, 524 U.S. 742 (1998)). Instead, a plaintiff "must establish that the jobs compared entail common duties or content, and do not simply overlap in titles or classifications." *Id.* (citing *E.E.O.C.*, 768 F.3d at 255). "To do so, a plaintiff may show, *inter alia*, that she and her comparators had the same title or rank; worked for the same division; shared supervisors; had analogous managerial responsibilities; performed the same tasks; had the same skills or experience; and worked on projects of a similar size or budget." *Id.* (collecting cases). So while Defendants are correct that Plaintiff might have pleaded more detail about the number of clients that she and Joshi had or the content or difficulty of their assignments, the Court finds that Plaintiff has plausibly alleged that (i) Ceros paid different wages to employees of the opposite

16

sex; (ii) Plaintiff and Joshi performed equal work on jobs requiring equal skill, effort, and responsibility; and (iii) the jobs were performed under similar working conditions.  *See Boatright*, 2020 WL 7388661, at *11.  For this reason, the Court denies Defendants' motion to dismiss Plaintiff's claims of wage discrimination under the EPA and the NYLL.

### 2.    Retaliation

Plaintiff next alleges that she engaged in protected activity under the EPA and the NYLL by complaining to Defendants about gender discrimination in compensation, and that because of these complaints, Defendants Ceros and Schwalb retaliated against Plaintiff by terminating her employment.  (AC ¶¶ 45-46, 54-55).  Defendants move to dismiss this claim on the basis that Plaintiff has not plausibly alleged facts showing that she was terminated *because of* her protected activity.  (Def. Br. 13-14 (citing *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) ("a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by […] retaliatory motives")).

To state a claim of retaliation, a plaintiff must present evidence that plausibly shows "[i] participation in a protected activity; [ii] that the defendant knew of the protected activity; [iii] an adverse employment action; and [iv] a causal connection between the protected activity and the adverse employment action."  *Johnson* v. *J. Walter Thompson U.S.A., LLC*, 224 F. Supp. 3d 296, 312 (S.D.N.Y. 2016) (applying the same standard to retaliation claims under Title VII, the EPA, and 42 U.S.C. § 1981) (quoting *Hicks* v. *Baines*, 593 F.3d 159,

164 (2d Cir. 2010)).  With respect to the third element, whether an action constitutes an adverse employment action is determined using an objective standard: "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which ... means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* (internal quotation marks omitted) (quoting *Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53, 68 (2006)).

The Court begins by considering whether Plaintiff engaged in protected activity.  As relevant here, filing an informal complaint with one's employer is one form of protected activity.  *See* 29 U.S.C. § 215 (prohibiting employers from discriminating against an employee "because such employee has filed any complaint").  "A complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection."  *Kasten* v. *Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).  This standard can be met by oral complaints as well as written ones.  *Id.*  An employee need not cite a specific statute, *see* N.Y. Labor Law § 215(1)(a), but her "complaint to the employer [must] be of a colorable violation of the statute," *Kassman* v. *KPMG LLP*, 925 F. Supp. 2d 453, 473 (S.D.N.Y. 2013) (internal citations omitted).  *See also, e.g., Duarte* v. *Tri-State Physical Med. & Rehab., P.C.*, No. 11 Civ. 3765 (NRB), 2012 WL 2847741, at *3 (S.D.N.Y. July 11, 2012) (denying motion to dismiss NYLL retaliation claim where plaintiff had begun asking her coworkers whether they were receiving statutorily required

overtimes wages); *Patel* v. *Baluchi's Indian Rest.*, No. 08 Civ. 9985 (RJS), 2009 WL 2358620, at *11 (S.D.N.Y. July 30, 2009) (finding that plaintiffs had alleged retaliation claims where they complained to their employer of "substandard and unsafe working conditions, low wages, and lack of benefits").

Here, Plaintiff has plausibly alleged that she made multiple internal complaints of wage discrimination of which Defendants were aware.  Plaintiff alleges that she met with Schwalb and complained about Ceros paying her less than Joshi because of her gender, and that she emailed a written version of her complaint to Schwalb.  (AC ¶¶ 23-24).  Schwalb subsequently held two meetings with Plaintiff: one with Plaintiff's direct supervisor, Au; and another with Wygant.  (*Id.* at ¶ 25).  Plaintiff further alleges that in late 2020, Schwalb "berated" Plaintiff upon learning that Plaintiff had shared her claims of unequal pay with a female intern, prompting Plaintiff to push back once again regarding the still-extant pay disparity.  (*Id.* at ¶¶ 29-30).  Accordingly, Plaintiff has plausibly alleged that she engaged in protected activity, and that Defendants were aware of that protected activity, prior to her termination.

There is also no question that Plaintiff sustained an adverse employment action.  "A plaintiff sustains an adverse employment action if she endures a 'materially adverse change' in the terms and conditions of employment," which includes termination.  *Chin-McKenzie* v. *Continuum Health Partners*, 876 F. Supp. 2d 270, 286 (S.D.N.Y. 2012).  Here, Plaintiff alleges that "several weeks" after her final complaint to Schwalb, Schwalb and Au terminated Plaintiff's

employment during a Zoom meeting.  (AC ¶¶ 32-33).  Accordingly, Plaintiff has also plausibly alleged the third element of her retaliation claim.

The question that remains, then, is whether Plaintiff has plausibly alleged a causal connection between the protected activity and the adverse employment action.  "[P]roof of causation can be shown either: [i] indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or [ii] directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Hicks*, 593 F.3d at 170.  Consistent with this standard, a showing of close temporal proximity between protected conduct and the occurrence of an adverse employment action may give rise to an inference of causation so as to make out a *prima facie* case of retaliation.  *Moccio* v. *Cornell Univ.*, 889 F. Supp. 2d 539, 587 (S.D.N.Y. 2012), *aff'd*, 526 F. App'x 124 (2d Cir. 2013) (summary order); *see also Clark Cnty. Sch. Dist.* v. *Breeden*, 532 U.S. 268, 273-74 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'" (citations omitted)).

The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action."  *Moccio*, 889 F. Supp. 2d at 587 (quoting *Gorman-*

*Bakos* v. *Cornell Co-op. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001)).  "[C]ourts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." *Id.* at 587-88 (citing *Flood* v. *UBS Global Asset Mgmt.*, No. 10 Civ. 374 (RJH), 2012 WL 288041, at *17 (S.D.N.Y. Feb. 1, 2012)); *cf. Treglia* v. *Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) ("The temporal proximity between [the] protected activity in February 1998 and the allegedly adverse employment actions in March 1998 is sufficient to establish the required causal link for a prima facie case.").

The Court finds that Plaintiff's allegation that she was terminated "several weeks" after her final oral complaint about the pay disparity, although vague, is sufficient at this stage of the proceedings because it states "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Baluchi's Indian Rest.*, 2009 WL 2358620, at *11 (finding that plaintiff adequately alleged causal element of retaliation claim where he alleged that he complained of unsafe working conditions and was discharged "shortly thereafter").  Accordingly, the Court finds that Plaintiff has adequately stated a claim for unlawful retaliation under both the EPA and the NYLL.

**D.    The Court Denies Defendants' Motion to Dismiss Plaintiff's Discrimination and Retaliation Claims Under the NYCHRL**

Lastly, Defendants move to dismiss Plaintiffs' discrimination and retaliation claims alleged under the NYCHRL.  Defendants' arguments in this regard substantially mirror those made in support of their motion to dismiss

Plaintiff's claims under the FLSA and the NYLL.  Given that the Court has already addressed Defendants' arguments under those two statutes and found them lacking, its analysis under the NYCHRL is relatively brief.

Section 8-107(1)(a) of the NYCHRL makes it an unlawful discriminatory practice "[f]or an employer or an employee or agent thereof, because of the ... gender ... of any person, to refuse to hire or employ or to bar or to discharge from employment such person; or to discriminate against such person in compensation or in terms, conditions or privileges of employment."  N.Y.C. Admin. Code § 8-107(1)(a).  "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."  *Benzinger* v. *Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 122 (S.D.N.Y. 2020) (quoting *Mihalik*, 715 F.3d at 109 (internal quotation marks and citations omitted)).  "Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards."  *Id.*  That said, even under the NYCHRL, "petty slights or trivial inconveniences ... are not actionable."  *Id.* at 122-23 (quoting *Williams* v. *N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 41 (1st Dep't 2009); *see also Mihalik*, 715 F.3d at 110 (concluding that to establish claim under NYCHRL, plaintiff need only demonstrate "that she has been treated less well than other employees" because of a protected characteristic).

### 1.   Discrimination

Plaintiff alleges that Defendants discriminated against her on the basis of her gender by paying her less than similarly situated male employees; and that Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily protected rights.  (AC ¶¶ 59-60).  These allegations suffice to allege discrimination under the NYCHRL.

While the pleading standards for wage discrimination under the NYLL mirror those for the EPA, the NYCHRL additionally requires plaintiffs to allege discriminatory animus.  *Moazzaz*, 2021 WL 827648, at *4.  But the burden is a light one:  To state a claim for discrimination that survives a motion to dismiss, a plaintiff "need only show that her employer treated her less well, at least in part for a discriminatory reason."  *Benzinger*, 447 F. Supp. 3d at 123 (quoting *Mihalik*, 715 F.3d at 110 n.8).  And the Second Circuit has described plaintiffs' threshold for making a prima facie case of discriminatory termination as "minimal."  *Moazzaz*, 2021 WL 827648, at *12 (quoting *Patterson* v. *Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (internal quotation marks and citations omitted)).  The NYCHRL's permissive standard allows for liability to be determined by the mere existence of differential treatment.  *Isbell* v. *City of New York*, 316 F. Supp. 3d 571, 593 (S.D.N.Y. 2018).  "[W]here the claim is based on disparate pay, a plaintiff must first set forth a *prima facie* case of discrimination, *i.e.*, that [she] is a member of a protected class and that [she]

was paid less than similarly situated non-members of the class." *Shah* v. *Wilco Sys., Inc.*, 806 N.Y.S.2d 553, 559 (1st Dep't 2005).

For substantially the same reasons that were discussed in connection with Plaintiff's discrimination claim under the NYLL, the Court finds that Plaintiff has stated a claim under the NYCHRL. To review, Plaintiff alleges that Defendants discriminated against her by paying her less than a similarly situated male colleague, despite the fact that Plaintiff performed similar duties requiring the same skill, effort, and responsibility as her male counterpart. (AC ¶ 40). Moreover, Plaintiff alleges that this differential in pay was not due to seniority, merit, quantity or quality of production, or a factor other than sex. (*Id.* at ¶ 41). These allegations, taken together, are sufficient to state a plausible NYCHRL discrimination claim.

Defendants assert in their briefing that they had legitimate grounds to terminate Plaintiff. (*See* Def. Br. 1). Defendants may present their evidence and arguments to that effect in a motion for summary judgment or at trial; they may not do so on a motion to dismiss. *See Moazzaz*, 2021 WL 827648, at *13; *Szuszkiewicz* v. *JPMorgan Chase Bank*, 12 F. Supp. 3d 330, 343 (E.D.N.Y. 2014) ("[T]he burden-shifting framework [for employment discrimination cases] is not applicable on a motion to dismiss." (citing *Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506, 511 (2002))). At this stage, Plaintiff's allegations suffice, and her discriminatory termination claim may proceed to discovery.

### 2.    Retaliation

Plaintiff also alleges that Defendants engaged in impermissible retaliation under the NYCHRL.  To prevail on a retaliation claim under the NYCHRL, "the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  *Mihalik*, 715 F.3d at 112.  This standard is even less rigorous than the standard for retaliation claims under the EPA and the NYLL.  *See J. Walter Thompson U.S.A., LLC*, 224 F. Supp. 3d at 312; *see also Williams*, 872 N.Y.S.2d at 34.  Having already concluded that Plaintiff has stated a claim for unlawful retaliation under those two statutes, the Court finds that she has also stated a claim for retaliation under the NYCHRL.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) is DENIED. The Clerk of Court is directed to terminate the motion at docket entry 16. Defendants are directed to file their answer on or before **March 31, 2022**.  The parties are directed to submit a joint letter and Proposed Case Management Plan and Scheduling Order on or before **April 7, 2022**.

SO ORDERED.

Dated:      March 10, 2022
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge